OPINION
{¶ 1} Appellant Citizens Insurance Company ("Citizens") appeals the decision of the Tuscarawas County Court of Common Pleas that granted Appellee Judith Dancy's motion for summary judgment and denied its cross-motion for summary judgment. The following facts give rise to this appeal.
 {¶ 2} The accident giving rise to this lawsuit occurred on March 23, 1998, when Frank Alexander negligently failed to yield the right-of-way after stopping at a stop sign. As a result of Alexander's negligence, appellee's vehicle collided with Alexander's vehicle causing serious physical injuries to appellee, including a fractured collarbone, a fractured leg, injuries to her right knee and a collapsed lung.
 {¶ 3} At the time of the accident, appellee was employed at the Knights Inn Dover. Dover Hospitality, Inc. d.b.a. the Knights Inn Dover was the named insured under a commercial general liability ("CGL") policy issued by Citizens. The CGL policy contains a "Business Auto Coverage Form" which provides liability coverage for "hired" and "non-owned" autos. Dover Hospitality, Inc. was also insured under a policy of excess/umbrella insurance issued by Citizens. It is uncontested that at the time of the accident, appellee was not acting within the scope of her employment and was operating a vehicle she owned.
 {¶ 4} On August 25, 1998, appellee received $13,100, in a settlement with Alexander's insurer, and executed a full release on behalf of Alexander. Thereafter, on September 19, 2001, appellee filed a complaint, pursuant to the Ohio Supreme Court's decision inScott-Pontzer[1], seeking UIM coverage under the CGL and excess/umbrella policies Citizens issued to Dover Hospitality, Inc. In her complaint, appellee alleges Citizens breached its contract of insurance issued to Dover Hospitality, Inc. by failing to provide UM/UIM coverage. Appellee also claims Citizens acted in bad faith when it failed to negotiate and settle her claim in good faith.
 {¶ 5} Citizens failed to timely answer appellee's complaint and, as a result, filed a request for leave to file instanter on November 8, 2001. The trial court granted Citizens' motion and Citizens' answer was deemed filed on November 14, 2001. On December 31, 2001, the trial court granted Citizens leave to file an amended answer and counterclaim for declaratory judgment which the trial court deemed filed on January 2, 2002.
 {¶ 6} On March 20, 2002, Citizens filed a motion for protective order and motion to bifurcate. The trial court granted Citizens' motion for protective order, in part, and granted the motion to bifurcate staying appellee's claim for bad faith pending a resolution of the coverage issues. Thereafter, the parties filed their respective motions for summary judgment. On October 28, 2002, the trial court granted appellee's motion for summary judgment and denied Citizens' cross-motion for summary judgment finding coverage exists for appellee, under the CGL and excess/umbrella policies Citizens issued to Dover Hospitality, Inc., by operation of law.
 {¶ 7} Citizens timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 "I. The trial court erred in finding um/uim coverage arises by operation of law under defendant-appellant citizen (SIC) insurance co.'S commercial general liability policy.
 "II. The trial court erred in finding plaintiff-appellee Judith E. Dancy is entitled to coverage under the umbrella coverage provided in defendant-appellant citizens insurance CO.'S Excess/umbrella Policy.
 "III. The trial court erred in finding plaintiff-appellee Judith E. Dancy is not precluded from recovery of um/uim benefits under defendant-appellant citizens insurance co.'s commercial general liability and excess/umbrella policies, even where such coverage is imposed upon the policies by operation of law."
"Summary Judgment Standard"
 {¶ 8} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 9} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review Citizens' assignments of error.
 I {¶ 10} In its First Assignment of Error, Citizens contends UM/UIM coverage does not arise by operation of law, under the CGL policy, because the policy does not constitute an "automobile policy of insurance" as defined in R.C. 3937.18(L). We agree.
 {¶ 11} In support of this assignment of error, Citizens maintains the determination of the proper version of R.C. 3937.18 to apply depends upon whether its CGL policy constitutes a motor vehicle liability policy subject to the two-year guaranteed policy period mandated by R.C.3937.18(A) and the Ohio Supreme Court's decision in Wolfe v. Wolfe,88 Ohio St.3d 246, 2000-Ohio-322. Citizens argues that under the definition of "automobile insurance policy" contained in R.C. 3937.30, its CGL policy is not an "automobile insurance policy." This statute provides:
 "As used in sections 3937.30 to 3937.39 of the Revised Code, `automobile insurance policy' means an insurance policy delivered or issued in this state or covering a motor vehicle required to be registered in this state which:
 "(A) Provides automobile bodily injury or property damage liability, or related coverage, or any combination thereof;
"(B) Insures as named insured, any of the following:
"(1) Any one person;
"(2) A husband and wife resident in the same household;
 "(3) Either a husband or a wife who reside[s] in the same household if an endorsement on the policy excludes the other spouse from coverage under the policy and the spouse excluded signs the endorsement. Nothing in this division (B)(3) shall prevent the issuance of separate policies to each spouse or affect the compliance of the policy with Chapter 4509. of the Revised Code as to the named insured or any additional insured.
 "(C) Insures only private passenger motor vehicles or other four-wheeled motor vehicles which are classified or rated as private passenger vehicles and are not used as public or private livery, or rental conveyances;
"(D) Does not insure more than four motor vehicles;
 "(E) Does not cover garage, automobile sales agency, repair shop, service station, or public parking operation hazards;
 "(F) Is not issued under an assigned risk plan pursuant to section 4509.70 of the Revised Code."
 {¶ 12} Citizens argues that pursuant to the above statute, the CGL policy is not an "automobile insurance policy" because it insures a corporation as well as an unlimited number of "hired" and "non-owned" autos. Citizens concludes that since the CGL policy is not an "automobile insurance policy," the two-year policy period does not apply and the policy in effect on September 20, 1997, which incorporated the H.B. 261 version of R.C. 3937.18, applies. Further, Citizens maintains that according to Jump v. Nationwide Mut. Ins. Co., Montgomery App. No. 18880, 2001-Ohio-1699, a policy's inclusion of "hired" and "non-owned" automobile liability coverage does not transform a policy into a motor vehicle liability policy as defined in the H.B. 261 version of R.C.3937.18.
 {¶ 13} In response to this argument, appellee maintains the Ohio Supreme Court's decision in Wolfe, supra, applies and therefore, the original policy issued on September 20, 1996, was in effect on the date of the accident and this policy is governed by the pre-H.B. 261 version of R.C. 3937.18. In Wolfe, the Court explained:
 "* * * [P]ursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state, must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39. We further hold that the commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy. Pursuant to our decision in Ross * * *, the statutory law in effect on the date of issue of each new policy is the law to be applied." (Emphasis added.) Id. at 265-266.
 {¶ 14} We agree with Citizens' conclusion that its CGL policy is not a motor vehicle liability policy. In reaching this conclusion, we rely upon the Ohio Supreme Court's decision in Selander v. Erie Ins.Grp., 85 Ohio St.3d 541, 1999-Ohio-287. We find the Selander decision applicable to the facts of the case sub judice because it specifically addresses how to determine the type of coverage. We find appellee's reliance on the Wolfe decision misplaced because Wolfe, as well as the following two decisions from the Ohio Supreme Court: Benson v. Rosler
(1985), 19 Ohio St.3d 41 and Ross v. Farmers Ins. Grp. of Cos.,82 Ohio St.3d 281, 1998-Ohio-381, do not address the issue of type of coverage, but rather the issue of scope of coverage. Accordingly, since Citizens' First Assignment of Error concerns the issue of type of coverage, we find the Selander decision dispositive of this matter on appeal.
 {¶ 15} In Selander, the decedent's spouse sought UM/UIM coverage under a Fivestar General Business Liability Policy issued by Erie to the decedent's business. Id. at 542. Erie refused to pay the claim on the basis that the Fivestar policy did not provide automobile liability coverage or UM/UIM coverage. Id. The trial court and the court of appeals found UM/UIM coverage under the Fivestar policy on the basis that the policy was a motor vehicle liability policy subject to R.C. 3937.18. Id. On appeal to the Ohio Supreme Court, the Court affirmed the decision of the court of appeals finding UM/UIM coverage under the Fivestar policy. Id.
 {¶ 16} In reaching this conclusion, the Court held that "the type of policy is determined by the type of coverage provided, not by the label affixed by * * * the insurer." Id. at 546, citing St. Paul Fire Marine Ins. Co. v. Gilmore (1991), 168 Ariz. 159, 165, 812 P.2d 977,983. The Court further concluded that where motor vehicle liability coverage is provided, even in limited form, UM/UIM coverage must be provided. Id. at 544, citing Goettenmoeller v. Meridian Mut. Ins. Co.
(June 25, 1996), Franklin App. No. 95APE11-1553 and House v. State Auto.Mut. Ins. Co. (1988), 44 Ohio App.3d 12. Because the policy provided liability coverage, in the limited circumstance for "non-owned" and "hired" vehicles, R.C. 3937.18 applied to the Fivestar policy and Erie was required to offer UM/UIM coverage. Id. at 544-545. Since Erie did not offer UM/UIM coverage, such coverage arose by operation of law. Id. at 546. Most importantly, for purposes of this appeal, the Court declined to apply the H.B. 261 version of R.C. 3937.18 to Erie's Fivestar policy. In footnote one, the Court specifically stated that it would not apply the H.B. 261 version of R.C. 3937.18, to the Fivestar policy, because that version of the statute was not in effect at the time of Selanders' accident. Id. at 546.
 {¶ 17} Thus, we conclude, according to the Supreme Court's decision in Selander, that it is the law in effect, on the date of the accident, that determines what version of R.C. 3937.18 applies for purposes of determining the type of coverage. The accident, in the case sub judice, occurred on March 23, 1998. The H.B. 261 version of R.C.3937.18 was in effect on this date.[2] Accordingly, pursuant to the Jump case and our recent decision in Bowles v. Utica Natl. Ins. Grp., Licking App. No. 02 CA 68, 2003-Ohio-254, the inclusion of liability coverage for "hired" and "non-owned" vehicles does not transform Citizens' CGL policy into a motor vehicle liability policy of insurance.
 {¶ 18} Under the H.B. 261 version of R.C. 3937.18, Section (L) of the statute defines an "automobile liability or motor vehicle liability policy of insurance" as either of the following:
 "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of responsibility is defined in division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
"(2) Any umbrella liability policy of insurance."
 {¶ 19} In the Bowles decision, we explained that general categories of "hired" or "non-owned" automobiles do not qualify as "specifically identified" vehicles as required by R.C. 3937.18(L)(1). Bowles at 3. Further, as in Bowles, Citizens' CGL policy does not list specifically identified vehicles. According to the Sixth District Court of Appeals in Burkholder v. German Mut. Ins. Co., Lucas App. No. L-01-1413,2002-Ohio-1184, "* * * the plain meaning of the words `specifically identified' as they are used in R.C. 3937.18(L)(1) is that the motor vehicles must be precisely, particularly and individually identified in order to meet the statutory definition." Id. at 8. Clearly, Citizens' CGL policy does not provide this degree of specificity and the use of the terms "hired" and "non-owned" automobiles is too general to meet this requirement.
 {¶ 20} Also, Citizens' CGL policy does not serve as proof of financial responsibility as defined in R.C. 4509.01(K). "Proof of financial responsibility" is defined in this section of the Revised Code as:
 "* * * [P]roof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident."
 {¶ 21} Because the CGL policy only addresses "hired" or "non-owned" vehicles, it is clear the vehicles referred to, in these provisions of the CGL policy, refer to vehicles registered by some other person(s) or entity, other than Dover Hospitality, Inc. d.b.a. the Knights Inn Dover. Therefore, the trial court erred when it granted appellee's motion for summary judgment finding UM/UIM coverage under Citizens' CGL policy and denied Citizens' cross-motion for summary judgment.
 {¶ 22} In reaching this conclusion, we recognize that when determining scope of coverage, as opposed to type of coverage, the Supreme Court does not use the date of accident to determine the applicable version of R.C. 3937.18. Instead, as early as 1985, the Court adopted the general rule that:
 "Statutes pertaining to a policy of insurance and its coverage, which are enacted after the policy's issuance, are incorporated into any renewal of such policy if the renewal represents a new contract of insurance separate from the initial policy." Benson, supra, at 44, citing 12 Appleman, Insurance Law and Practice (1981) 166, Section 7041.
 {¶ 23} In Benson, the Court was asked to determine "* * * whether anti-stacking provisions contained within insurance policies obtained prior to the effective date of former R.C. 3937.181 are null and void where such policies are renewed thereafter." Id. at 43. The Court concluded that notwithstanding R.C. 3937.31, which requires that automobile policies be issued for a policy period of not less than two years, such policies when written for specific periods of less than two years, may be considered term policies rather than continuing policies. Id. at 44. The Court found the policies, under consideration, to provide term coverage and therefore, at the expiration of the six-month period, with the insurer's subsequent acceptance of the premiums, there was a new contract of insurance coverage entered into by the parties. Id. Further, since R.C. 3937.181 was in effect as of the date of the renewals of the policies, it became a part of the policies and gave lawful force to the language contained within the original policies relative to the stacking of insurance. Id. at 45.
 {¶ 24} The Ohio Supreme Court subsequently limited its holding, in Benson, in the Wolfe, decision. The court concluded that "* * * certain aspects of the court's decision in Benson are contradictory to the language and statutory purpose of R.C. 3937.31(A). We, therefore, limit the holding of Benson and reject those portions of the Benson opinion to the extent that they conflict with R.C. 3937.31(A)." Id. at 251-252. Thus, the Court abrogated its previous ruling in Benson, as it pertained to the application of R.C. 3937.18(A), and instead held that:
 "1. Pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39.
 "2. The commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is characterized as a new policy of insurance or a renewal of an existing policy." Id. at paragraphs one and two of the syllabus.
 {¶ 25} Thus, the Wolfe decision recognized the mandatory two-year period required by R.C. 3937.18 and abolished the distinction between a new policy of insurance and the renewal of an existing policy of insurance. However, consistent with its decision in Benson and relying on its decision in Ross, supra, the Court continued to recognize the concept that the statutory law in effect on the date of issue of each new policy is the law to be applied in determining scope of coverage. Wolfe at 250. In Ross, the Court held that:
 {¶ 26} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross at syllabus.
 {¶ 27} In summary, we conclude Citizens' First Assignment of Error asks us to determine the type of coverage, as opposed to the scope of coverage. Therefore, the Ohio Supreme Court's decision in Selander applies. Selander requires us to apply the law in effect, on the date of the accident, in order to determine the type of coverage. As noted above, the law in effect, on the date of the accident, was the H.B. 261 version of R.C. 3937.18. Section (L) of R.C. 3937.18 specifically defines what is a motor vehicle liability policy of insurance. It has been judicially determined, in both the Jump and Bowles cases, that the inclusion of "hired" and "non-owned" provisions in a policy of insurance does not transform the policy into a motor vehicle liability policy under the H.B. 261 version of R.C. 3937.18 and Citizens therefore, did not have to offer UM/UIM coverage. Finally, because this policy is not a motor vehicle liability policy, the Wolfe decision is inapplicable.
 {¶ 28} Citizens' First Assignment of Error is sustained.
 II {¶ 29} Citizens maintains, in its Second Assignment of Error, the trial court erred when it determined appellee was entitled to coverage under the excess/umbrella policy it issued to Dover Hospitality, Inc. d.b.a. the Knights Inn Dover. We agree.
 {¶ 30} We conclude appellee is not entitled to coverage under Citizens' excess/umbrella policy pursuant to Section III B of said policy. This provision provides as follows:
"III. APPLICABLE TO COVERAGE B ONLY
"This policy does not apply to:
"* * *
"B. AUTOS
 "Any liability or expense arising out of the ownership, maintenance, use or entrustment to others of any auto. Use includes operation and loading or unloading."
 {¶ 31} The Eighth District Court of Appeals recently reviewed this identical language in determining whether an insurer was required to offer UM/UIM coverage in an umbrella policy. In Collier v. Citizens Ins.Co. of Am., Cuyahoga App. No. 80852, 2002-Ohio-6499, the court concluded the insurer was not required to offer UM/UIM coverage and stated as follows:
 "Inasmuch as the umbrella portion of the policy specifically excludes from coverage `any liability * * * arising out of the ownership, maintenance, use or entrustment to others of any auto[,]' Citizens Insurance was not required to offer UM/UIM coverage. UM/UIM coverage must be offered only when `automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle' is offered. R.C. 3937.18. Here, Citizens Insurance was not required, therefore, to offer automobile liability insurance in the umbrella portion of the policy." Id. at ¶ 35.
 {¶ 32} As in the Collier case, the case sub judice contains the identical language excluding coverage for autos. Accordingly, we conclude that since the excess/umbrella policy did not provide coverage for autos, Citizens was not required to offer UM/UIM coverage as required by R.C. 3937.18 and such coverage may not arise by operation of law.
 {¶ 33} Citizens' Second Assignment of Error is sustained.
 {¶ 34} We will not address Citizens' Third Assignment of Error as it is moot based upon our disposition of its First and Second Assignments of Error.
 {¶ 35} For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby reversed.
 By: Wise, J. Edwards, J., concurs separately. Hoffman, P.J., dissents.
[1] Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292.
[2] The H.B. 261 version of R.C. 3937.18 became effective on September 3, 1997.